IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

SHARON DALLAS, *as Administrator of the*
*Estate of Charles Duynes, THE DECEDENT, deceased,*
 Plaintiff,

v.                                                    Civil No. 3:21cv349 (DJN)

SERGEANT CRAFT, *et al.*,
 Defendants.

## **MEMORANDUM OPINION**

Plaintiff Sharon Dallas,[1] administratrix of the Estate of Charles Duynes, deceased

("Duynes" or "the decedent"), brings this action against fourteen Defendants[2] (collectively,

"Defendants") alleging violations of the Eighth and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. § 1983 ("Section 1983"), the Virginia Wrongful Death Statute, Va. Code

§ 8.01-50 *et seq.*, the Virginia Tort Claims Act, Va. Code § 8.01-195.1 *et seq.*, as well as

---

[1]      Plaintiff, the mother of Duynes, brings suit in her representative capacity on behalf of his children as the statutory beneficiaries:  Aryonna Duynes, Zaquan Stith, Azayah Palmer, Javil Painter, Adasia Butts and Antonio Forrest.  (2d Am. Compl. ¶ 1 (ECF No. 96).)

[2]      Sergeant Craft, Corrections Officer Moss, Sergeant Norris, and Captain Johnson (collectively, "VDOC Defendants"), Armor Correctional Health Services, Inc. (sued as "Armor Correctional Health Services" and hereinafter, "Armor"), Benjamin Ulep, M.D., Tracie Seward R.N., Shirley Abouhassoun-Semlali R.N., and Crystal Allen R.N. (Nurses Seward, Semlali, and Allen, respectively, and collectively and together with Ulep and Armor, the "Armor Defendants"), Dawnte Walker, R.N. (sued as "D. Walker, RN") and Makeshia Sykes, R.N. (referred to respectively as "Nurse Walker" and "Nurse Sykes"), Michael Picio, D.O., Dr. S. Patel ("Dr. Patel") and Ayanna Jackson ("Nurse Jackson").  Defendant Jackson's claims were voluntarily dismissed by Plaintiff without prejudice on July 19, 2022.  (ECF No. 125.)

common law negligence and gross negligence principles.[3]  This matter now comes before the

Court on Defendant Dr. Sejal Patel's Motion to Dismiss Counts VII, VIII, and XI of Plaintiff's

Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("MTD" (ECF No. 113)).[4]

For the reasons set forth below, the Court will GRANT the Motion.  The Court will

DISMISS WITH PREJUDICE Counts VII, for gross negligence, and VIII, for deliberate

indifference, and Count XI, seeking punitive damages, as to Dr. Patel.  This case shall proceed

only on Count VI of the Second Amended Complaint against Dr. Patel.

## I.    BACKGROUND

This negligence, gross negligence and § 1983 action arises out of Defendants' alleged

failure to provide Duynes with requested and necessary medical treatment while detained by the

Virginia Department of Corrections ("VDOC").  Plaintiff alleges that, as a result of Defendants'

failure, Duynes died from hemorrhagic pancreatitis due to obstructive cholelithiasis and

cholecystitis, or "in laymen's terms" gallstones, "a medical condition that should have been

easily diagnosed and was completely treatable if diagnosed and managed."  (2d Am. Compl.

¶¶ 69-70.)

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Second Amended

Complaint (ECF No. 96).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop,

the Court accepts the following facts as alleged for purposes of resolving the instant motion.[5]

---

[3]    The Court's June 9, 2022 Memorandum Opinion addresses Dr. Picio, the Armor
Defendants, the VDOC Defendants and Nurses Sykes and Walker's motions to dismiss.  (ECF
No. 103).
[4]    The Court dismissed Counts IV and V against Dr. Patel on June 9, 2022, in its
Memorandum Opinion (ECF No. 103).

On June 2, 2019, then-38-year-old Duynes died in the sally port at Sussex I State Prison awaiting — for six hours — his emergency transport to the MCV Emergency Room. (2d Am. Compl. ¶¶ 18, 61, 68.)  On several occasions over the preceding eight months, Duynes had reported to medical personnel, corrections staff and family persistent abdominal pain, nausea and vomiting, which proved unresponsive to treatment. (2d Am. Compl. ¶ 66.)  Plaintiff herself "called the prison on several occasions over the eight months or more during which the decedent suffered in the defendants' custody.  She spoke with on-duty corrections officers and on-duty medical personnel and advised that her son required immediate medical attention." (2d Am. Compl. ¶ 71.)  Plaintiff alleges that Defendants "were aware of the [ ] decedent's deteriorating medical condition, were aware that the decedent was not being provided access to necessary medical care, and by either act or omission failed to provide the decedent with the medical care necessary to save the decedent's life, in violation of federal and Virginia law." (2d Am. Compl. ¶¶ 74-75.)

### 1.    Defendant Dr. Patel

Defendant Armor Correctional Health Services, Inc. "is a Corporation Company under the laws of the State of Florida and licensed to do business in the Commonwealth of Virginia" that "entered into a written contract with the VDOC and Sussex I State Prison to provide medical care to the inmates incarcerated at Sussex I State Prison." (2d Am. Compl. ¶¶ 6-7.)  At all relevant times, Defendant Patel "w[as] duly appointed and actively employed" as a doctor,

---

[5]    For a full statement of the facts, see Memorandum Opinion (ECF No. 103).  Here, the Court recounts only those facts relevant to resolution of the instant motion.

"acting within the scope of [he]r employment, agency, and servitude for Armor Correctional, Sussex I State Prison, and the VDOC."[6]  (2d Am. Compl. ¶ 8.)

> **2.    Plaintiff's Allegations Relating to Dr. Patel's Medical Care Provided to Duynes**

On or about April 26, 2011, at age thirty, Duynes "was transferred to the custody of the VDOC" and received an intake physical that showed him "to be of general good health, with only a dental issue." (2d Am. Compl. ¶ 18.)  Two years later, VDOC transferred Duynes to Sussex I State Prison, and his medical records at transfer indicated "that the decedent's only health issue was back pain." (2d Am. Compl. ¶ 19.)

On October 16, 2018, Duynes first reported his stomach pain to Nurse Walker, who examined him and recorded the encounter in Duynes' jail records, to which all Defendants had access. (2d Am. Compl. ¶ 20.)  Between October 16, 2018, and January 28, 2019, jail medical providers saw Duynes six times for examination regarding his stomach pains, all of which providers noted in his records. (2d Am. Compl. ¶¶ 20-31.)  Additionally, Duynes submitted two grievances during this time requesting examination by a doctor for his worsening abdominal symptoms and sent two pleas to his family asking them to contact the jail for him to receive medical attention. (2d Am. Compl. ¶¶ 23, 30-31; Exs. C, F.)

On January 28, 2019, Duynes had his only known contact with Dr. Patel.  Duynes received a note from Dr. Patel stating that his labs had come back "abnormal." (2d Am. Compl. ¶ 32.)  Accordingly, the document noted that he needed examination during his next chronic care clinic visit. (2d Am. Compl. ¶ 32.)  Documents are silent as to whether Dr. Patel physically

---

[6]    Plaintiff's Second Amended Complaint refers to Dr. Patel using he/him pronouns. However, Dr. Patel's own briefing uses she/her pronouns.  While still accepting the facts as true in Plaintiff's Second Amended Complaint, the Court will refer to Dr. Patel's using her choice of pronouns:  she/her.

examined Duynes. (2d Am. Compl. ¶ 32.) Dr. Patel otherwise failed to examine or treat Duyne,

provide him with any diagnostic testing or order that he be transported to an appropriate outside

medical facility with staff equipped to treat his serious medical condition. (2d Am. Compl.

¶ 32.)

Following Dr. Patel's notes, Duynes filed yet another grievance with VDOC notifying

Defendants that Armor was not providing adequate medical evaluation and treatment, and

requesting outside help. (2d Am. Compl. ¶ 33.) He then received examination by Nurse Walker

on February 6, 2019, and she noted Duynes' abnormal lab work, pending blood tests and need

for examination by a doctor. (2d Am. Compl. ¶ 34.) On February 12, 2019, Duynes followed up

and saw Nurse Jackson, now reporting additional symptoms. (2d Am. Compl. ¶ 35.) Nurse

Jackson discussed the abnormal lab results noted by Dr. Patel, followed up on his stomach pain,

and referred him to a doctor. (2d Am. Compl. ¶ 35; Ex. B at 9.) After this, Defendants did not

provide Duynes with access to a physician, diagnostic testing, an outside medical facility or any

other medical treatment for nearly four months. (2d Am. Compl. ¶ 36.)

### 3. Plaintiff's Allegations Relating to Events Following Dr. Patel's Medical Care

On June 1, 2019, Duynes' condition took a dramatic turn for the worse. (2d Am. Compl.

¶¶ P, 37.) Upon arrival in the medical unit, Duynes was placed in a wheelchair, where he

continued to cry due to pain and beg the corrections officers and medical personnel for help.

(2d Am. Compl. ¶ 42.) Nurse Semlali baselessly discharged him despite repeated episodes of

vomiting, which tested positive for blood. (2d Am. Compl. ¶ 42.) At 3:34 p.m., Duynes

returned to the medical unit where Nurse Semlali kept him for observation. (2d Am. Compl.

¶ 52.) At approximately 11:26 p.m., now in the care of Nurse Sykes, Duynes reported another

episode of vomiting and continued abdominal pain. (2d Am. Compl. ¶ 55.) At approximately

1:36 a.m. on June 2, 2019, Nurse Sykes noted that Duynes lay on his bed with a towel over his eyes and that she could not awaken him. (2d Am. Compl. ¶ 57.) By 3:15 a.m., Duynes had awakened and reported to Nurse Sykes another episode of vomiting and an increase in abdominal pain to a level of ten out of ten. (2d Am. Compl. ¶¶ 58-59.)

At 5:00 a.m., on June 2, 2019, after six hours of observing Duynes, Nurse Sykes finally notified a doctor of his deteriorating condition, who immediately recommended that Duynes be transported to MCV Emergency Room via a security van. (2d Am. Compl. ¶¶ U, 61.) Yet, no on-duty Defendant facilitated transport of Duynes to a hospital emergency room for more than five hours. (2d Am. Compl. ¶ 61.) At 9:53 a.m., Nurse Semlali transported Duynes to the sally port to wait on emergency transport. (2d Am. Compl. ¶ 65.)

Shortly thereafter, Duynes would die there in the sally port, awaiting transport to the emergency room. At 10:30 a.m., twenty-four hours after Duynes first went to the medical unit with a bag of bloody vomit and abdominal pain, and nearly eight months after he first reported abdominal pain to medical personnel and corrections staff at Sussex I, Nurse Semlali received a call from the sally port that Duynes had become unresponsive. (2d Am. Compl. ¶ 66.) At 10:35 a.m., Nurse Semlali arrived in the sally port to find Duynes sitting in the wheelchair, shaking and unresponsive. (2d Am. Compl. ¶ 67.) At 10:40 a.m., Nurse Semlali moved Duynes to the floor, applied AED and began CPR. (2d Am. Compl. ¶ 67.) Nurse Semlali asked security to call 911, and EMTs arrived at 10:55 a.m. (2d Am. Compl. ¶ 67.) The EMTs continued CPR, administered Epi and Narcan and intubated Duynes. (2d Am. Compl. ¶ 67.) Sixteen minutes later, the EMTs called Dr. Clark at Southside Regional Medical Center, who advised them to stop CPR. (2d Am. Compl. ¶ 68.) Dr. Clark called Duynes' time of death at 11:11 a.m. on June 2, 2019. (2d Am. Compl. ¶ 68.)

6

Some weeks later, a Virginia-licensed medical examiner determined that Duynes' cause

of death was hemorrhagic pancreatitis due to obstructive cholelithiasis and cholecystitis. (2d

Am. Compl. ¶¶ Y, 69.)  In laymen's terms, Duynes died from gallstones, an easily diagnosable

and treatable medical condition.  (2d Am. Compl. ¶ 70.)

Plaintiff, Duynes' mother, called the prison on several occasions over the eight months or

more during which Duynes suffered in Defendants' care.  (2d Am. Compl. ¶ 71.)  She spoke with

on-duty corrections officers and on-duty medical personnel and advised that her son required

immediate medical attention.  (2d Am. Compl. ¶ 71.)  In spite of all of the information known to

them, Defendants failed to take the necessary steps to provide Duynes with the medical treatment

necessary to save his life.  (2d Am. Compl. ¶ 71.)  All Defendants were on-duty during the time

period at issue and had the responsibility to maintain the health and welfare of the inmates in

custody of Sussex I State Prison, including Duynes specifically.  (2d Am. Compl. ¶ 73.)  Each

Defendant had awareness of Duynes' deteriorating medical condition and knew that he was not

being provided access to necessary medical care.  (2d Am. Compl. ¶¶ 74-75.)  By their acts

and/or omissions, Defendants failed to provide Duynes with the medical care necessary to save

his life.  (2d Am. Compl. ¶¶ 74-75.)

### B.    Procedural History

On November 10, 2021, Plaintiff filed her Amended Complaint (ECF No. 42) against

Defendants, raising eleven counts for relief based on the above allegations.  The still-existing

Counts relevant to Dr. Patel follow.  Counts Six through Eight address the on-duty medical

personnel, including Dr. Patel.  (Am. Compl. ¶¶ X, XI, XII.)  Count Six alleges a negligence

claim of wrongful death, certifying, pursuant to Virginia Code § 8.01-50.1, that a qualified

expert has rendered a written opinion that the medical personnel's and Armor's actions deviated from the applicable standard of care, proximately causing the death of Duynes. (Am. Compl. ¶¶ 139–53.) Count Seven asserts a gross negligence claim resulting in death, alleging failure to provide necessary and adequate medical treatment against the medical providers, including Dr. Patel. (Am. Compl. ¶¶ 154–63.) Count Eight asserts, also against Dr. Patel and other medical providers, a deliberate indifference to serious medical need claim, alleging that they failed to facilitate any diagnostic testing and medical treatment in spite of their awareness of Duynes' serious medical condition in violation of the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983. (Am. Compl. ¶¶ 164–75.)

Count Eleven asserts a claim against all Defendants for punitive damages, alleging that they acted with actual malice toward Duynes. (Am. Compl. ¶¶ 189-93.) Based upon the foregoing claims, Plaintiff seeks, jointly and severally, compensatory damages of five million dollars and punitive damages of ten million dollars, plus all costs and interest as permitted by law. (Am. Compl. ¶ 193.)

Multiple Defendants filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 15, 2021, and March 17, 2022. (ECF Nos. 49, 51, 54, 76.)[7] On June 1, 2022, the Court granted Plaintiff's Motion to Amend (ECF No. 83) allowing Plaintiff to file a Second Amended Complaint (ECF No. 96), which merely corrects the misnomer of Defendant "M. Syes" to "Makeshia Sykes" and leaves the allegations otherwise unchanged. On June 9, 2022, the Court issued a Memorandum Opinion (ECF No. 103), granting in part and

---

[7]     Defendants Dr. Picio, the Armor Defendants, the VDOC Defendants and Nurses Sykes and Walker, respectively.

denying in part the motions to dismiss.  (ECF Nos. 49, 51, 54, 76).  The Memorandum Opinion dismissed Counts IV and V against Dr. Patel.  (ECF No. 103).

Dr. Patel filed her Answer to the Second Amended Complaint (ECF No. 111) and her Motion to Dismiss (ECF No. 112) on June 24, 2022.  In the Motion to Dismiss, Dr. Patel challenges the sufficiency of Plaintiff's allegations against her to amount to deliberate indifference and gross negligence, seeking to dismiss the three counts pursuant to Rule 12(b)(6). (MTD at 3.)  Plaintiff responded on July 25, 2022.  (ECF No. 126).  Dr. Patel filed a reply in support of her motion on August 5, 2022 (ECF No. 128), rendering this matter ripe for review.

## I.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations in a complaint as true and view the facts in a light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations

9

omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## II.    ANALYSIS

The Court will begin by discussing Plaintiff's § 1983 claim against Dr. Patel for direct liability based upon deliberate indifference in violation of the Eighth and Fourteenth Amendments. Next, the Court turns to Plaintiff's claims for gross negligence. Then, the Court concludes with the sufficiency of the allegations to support her claim for punitive damages.

### A.    Deliberate Indifference

The Court finds that Plaintiff fails to plausibly state a claim for deliberate indifference against Dr. Patel. The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "[a] prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021).

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that *objectively* the deprivation of a basic human need was 'sufficiently serious,' and (2) that *subjectively* the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v.*

10

*Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (emphasis added)).

Under the first prong, the inmate must allege facts to suggest extreme deprivation which amounted to more than the "routine discomfort" that constitutes "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). For a claim for deliberate indifference to medical needs, like here, the objective prong requires a plaintiff to establish "that his medical condition was objectively serious — that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hixson*, 1 F.4th at 302 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Under the second prong, the plaintiff must establish that the official "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Id.* (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). Again, in the deliberate indifference to medical needs context, the subjective prong requires the plaintiff to allege "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178. A plaintiff can meet this requirement through "direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir.

11

2016) (cleaned up).  A prison official's "failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Id.* at 232 (quoting *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990)).

"Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (requiring facts demonstrating that the defendant actually drew the inference of the risk of harm).  Therefore, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1.    Objective Prong

The Court finds, for the purpose of the motion to dismiss, that Plaintiff has satisfied the objective prong of the deliberate indifference test by establishing that Duynes had a "serious medical need so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Scinto*, 841 F.3d at 225 (cleaned up). Indeed, Dr. Patel "assumes, without

conceding, that Duynes had a medical need sufficient to satisfy the first prong." (MTD at 6.)

Reading the facts in the light most favorable to the nonmoving party, Duynes' constant pleas for

help and complaints to medical professionals about severe stomach pain, nausea, cramping,

sweating, vomiting and, later, inability to walk show a "medical need . . . so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." *Scinto*, 841 F.3d at

225; *see, e.g., Sams v. Armor Corr. Health Servs., Inc.*, 2020 WL 5835310, at *21 (E.D. Va.

Sept. 30, 2020) (finding that plaintiff's "consistent pleas for help and complaints about

headaches, nausea, hot and cold flashes, head pressure, and inability to hold down

food . . . . readily satisfies the objective prong."); *Brown v. D.C.*, 514 F.3d 1279, 1284 (D.C. Cir.

2008) ("The intense and often relentless pain that accompanies [gallstones], and the

complications that can follow, easily push [plaintiff]'s claim into the category of serious medical

needs."); *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir. 1986) (holding that alleged gallstones

constituted a serious medical need).

      As Plaintiff satisfies the objective prong of the deliberate indifference claim, the Court

turns to whether Plaintiff has met the subjective prong of the deliberate indifference standard

against Dr. Patel.

      **2.    Subjective Prong**

      When bringing a deliberate indifference claim against prison medical professionals, the

mere provision of "some treatment" does not necessarily satisfy the requirement that prison

medical staff provide inmates with constitutionally adequate treatment. *De'lonta v. Johnson*,

708 F.3d 520, 526 (4th Cir. 2013); *see also King v. United States*, 536 F. App'x 358, 362-63 (4th

Cir. 2013) (noting that "some treatment" does not always meet the standard of "constitutionally

adequate treatment"); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("[A] prisoner also is

not required to show that he was literally ignored."); *Gardner v. United States*, 184 F. Supp. 3d

175, 181 (D. Md. 2016) ("[A] claim arising from substandard care may be cognizable — but

only in unusual circumstances, such as where the treatment provided is so cursory as to amount

to no treatment at all.") (cleaned up).

> To illustrate the point, in *De'lonta*, the Fourth Circuit set out the following analogy:

> [I]magine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not. Accordingly, although Appellees and the district court are correct that a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need.

708 F.3d at 526; *see also J.F. v. Correct Care Sols., LLC*, 2019 WL 1057401, at *10 (D. Md.

Mar. 6, 2019) (finding that a plaintiff's allegation that the nurse told an inmate complaining of

chest pain who had a pulse of 48 to "relax and sip water" so inadequately treated him that

constituted deliberate indifference). However, a prison medical provider who serves as a

"gatekeeper for other medical personnel capable of treating the condition" may be held liable

under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper

role." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *see also Estelle,* 429 U.S. at 104–05

(deliberate indifference is manifested by prison personnel "in intentionally denying or delaying

access to medical care").

> Yet, merely misdiagnosing an inmate does not amount to deliberate indifference.

*Johnson*, 145 F.3d at 166 ("[A]ny negligence or malpractice on the part of . . . doctors in missing

[a] diagnosis does not, by itself, support an inference of deliberate indifference."); *see also*

*Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (affirming summary judgment in favor of a nurse that misdiagnosed a heart attack as the flu and failed to pass on information to a doctor); *Hinchman v. Winters*, 2011 WL 3205366, at *9 (N.D.W. Va. July 27, 2011) (dismissing a deliberate indifference claim where the nurse misdiagnosed the plaintiff's stroke and failed to pass on information to a doctor).

Moreover, "[i]t is well established that a prisoner's difference of opinion about the correct course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Smith v. Mathis*, 2012 WL 253438, at *5 (D. Md. Jan. 26, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985)). Thus, decisions of "medical judgment," like whether to order "an X-ray or additional diagnostic techniques," do not represent cruel and unusual punishment. *Estelle*, 429 U.S. at 107; *Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015) (*citing Wright*, 766 F.2d at 849) ("There is no Eighth Amendment violation where diagnostic tests are declined based on medical assessments of the patient."). Even when hindsight suggests that "treatment decisions may have been mistaken, even gravely so," "disagreement[s] between an inmate and a physician over the inmate's proper medical care . . . consistently . . . fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178 (quotations and citations omitted). Against this backdrop, the Court turns to Plaintiff's deliberate indifference claim against Dr. Patel.

### a.    Refusal to Treat

First, while "claims that a medical professional refused to treat an inmate" typically survive a motion to dismiss, *Boley v. Armor Corr. Health Servs., Inc.*, 2022 WL 905219, at *8 (E.D. Va. Mar. 28, 2022), Plaintiff fails to state a plausible claim for deliberate indifference with respect to Dr. Patel. Plaintiff avers that Dr. Patel "failed to examine, treat, or provide the

15

decedent with any diagnostic testing." (2d Am. Compl. ¶ 32.)  However, these allegations run contrary to Dr. Patel's notes documenting the January 28, 2019 visit, which Plaintiff attached, in part, to her Amended Complaint.[8]  (2d Am. Compl. Ex. B at 15.)  Dr. Patel signed and noted on a document labeled Laboratory/Diagnostic Test(s) Results that Duynes' labs were "abnormal," but "non-critical results related to [Duynes'] chronic care disorder.  Provider is aware and you will be followed [sic] in your next chronic care clinic." (2d Am. Compl. ¶ 32; MTD Ex. A.)  Dr. Patel also circled values labeled "HIGH" for "Total Bilirubin" and "LOW" for "Potassium" on the laboratory results report, which she signed. (2d Am. Compl. Ex. B at 15.)  Duynes then attended a follow-up chronic care appointment fourteen days later on February 12, 2019, during which his lab results were discussed, and he was referred to a doctor. (2d Am. Compl. Ex. B at 9.)  These actions by Dr. Patel clearly establish that she did not fail to provide the decedent with any diagnostic testing, as diagnostic testing was conducted, per the Laboratory/Diagnostic Test(s) Results document that Duynes received.  Additionally, Patel referred Duynes to his chronic-care provider to discuss the abnormal results that Patel noticed, and the follow-up visit occurred.  These actions are not "so cursory as to amount to no treatment at all." *King*, 536 F. App'x at 362.  Nor does Plaintiff allege that Dr. Patel's actions constituted a refusal to act in her gatekeeping role, as the exact opposite occurred and Duynes received a follow-up visit to discuss

---

[8]     Where the bare allegations of the complaint conflict with any document incorporated therein, the document prevails. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).  Because Plaintiff incorporated part of Dr. Patel's notes by attaching them to her Amended Complaint, her notes prevail over her allegation that Patel "failed to examine, treat, or provide the decedent with any diagnostic testing."  Plaintiff did not incorporate all of Dr. Patel's notes in the Complaint; she only includes one page of a three-page document (2d Am. Compl. Ex. B at 15).  However, Plaintiff references the first page — the Laboratory/Diagnostic Test(s) Results cover page – in the Complaint (2d Am. Compl. ¶ 9).  Due to this partial incorporation, and for completeness, the Court incorporates the entirety of the document, which can be seen in full in Defendant's Motion to Dismiss. (MTD Ex. A (ECF No. 113-1).)

his results due to Dr. Patel's actions. (2d Am. Compl. Ex. B at 9.) Accordingly, Dr. Patel clearly did not refuse to treat Duynes.

**b.**     **Misdiagnosis**

Additionally, as previously discussed, merely misdiagnosing an inmate does not amount to deliberate indifference. *Johnson*, 145 F.3d at 166 ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."). Indeed, even taking the facts alleged as true and reading them in the light most favorable to Plaintiff, Plaintiff concedes that documents are silent as to whether Dr. Patel diagnosed Duynes' medical condition, proving fatal to Plaintiff's claim without more. This allegation admits that Dr. Patel did not have actual knowledge of Duynes' condition, an essential element of a deliberate indifference claim. *Id.* at 167. Dr. Patel only knew of high levels of total bilirubin and low levels of potassium, neither of which demonstrate actual knowledge of Duynes' gallstones. (2d Am. Compl. ¶ 32.)

"A prison official is not liable if he 'knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Id.* (quoting *Farmer,* 511 U.S. at 844). For example, in *Johnson*, a prison doctor failed to diagnose an inmate's pituitary tumor, which ultimately caused him to go blind, despite having full knowledge of the inmate's symptoms from having examined the inmate on seventeen occasions. *Id.* at 165-66. However, the Fourth Circuit found such allegations did not amount to deliberate indifference, concluding that the plaintiff "needed to produce evidence that the doctors actually drew the inference between the symptoms and the tumor" and correctly diagnosed the plaintiff. *Id.* at 166. Here, like in *Johnson*, Plaintiff's claim fails, because she has alleged no facts to

17

support an assertion "that the doctor[] subjectively knew about the [underlying condition] and deliberately failed to treat it." *Id.* at 168.

          **c.**    **Diagnosis Testing**

Similarly, Plaintiff's allegations that Dr. Patel failed to order diagnostic testing or examination as a result of the "abnormal" laboratory results go to Dr. Patel's medical judgment, rather than a showing of deliberate indifference. "[D]issatisfaction with a doctor's chosen course of treatment — even when that course was negligent — is insufficient to establish deliberate indifference," unless "so far afield of accepted professional standard as to raise an inference of deliberate indifference," which has not been alleged here. *Zackery v. Mesrobian*, 299 F. App'x 598, 601 (7th Cir. 2008) (citing *Estelle*, 429 U.S. at 107). Plaintiff merely alleges that Dr. Patel failed to order (additional) diagnostic testing following the abnormalities in Duynes' results, but "[c]ourts have repeatedly rejected Eighth Amendment claims stemming from allegations that medical practitioners failed to provide diagnostic tests—even in cases where such tests might have proved highly beneficial to the prisoner-plaintiffs or where failure to provide such tests may have constituted medical malpractice." *Gardner*, 184 F. Supp. 3d. at 186 (collecting cases). As Plaintiff fails to allege in her Complaint that Dr. Patel "failed to make a sincere and reasonable effort to care for the inmate's medical problems," Plaintiff fails to state a claim for deliberate indifference. *Smith v. Butler*, 2021 WL 252557, at *9 (D. Md. Jan. 26, 2021).

Therefore, the Court will grant Dr. Patel's Motion to Dismiss as to the deliberate indifference claim against her.

### B.    Gross Negligence

For the same reasons that Plaintiff has inadequately stated a claim for deliberate indifference, the Court finds that Plaintiff has failed to state a claim for Gross Negligence against Dr. Patel.

Virginia recognizes three degrees of negligence, listed here in descending order of severity: (1) willful or wanton negligence, which is roughly equivalent to the subjective component of deliberate indifference; (2) gross negligence; and (3) simple or ordinary negligence. *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918-19 (Va. 2004); *see Boley*, 2022 WL 905219, at *12 ("The definition of willful and wanton negligence nearly mirrors the subjective prong of the deliberate indifference test.") (cleaned up). The Supreme Court of Virginia has defined gross negligence as "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan*, 603 S.E.2d at 918). It requires "a degree of negligence that would shock fair-minded persons." *Doe v. Baker*, 857 S.E.2d 573, 587 (Va. 2021) (quoting *Cowan*, 603 S.E.2d at 918)). The standard is one of "indifference, not inadequacy." *Fijalkowski v. Wheeler*, 801 F. App'x 906, 914 (4th Cir. 2020) (citing *Elliott*, 791 S.E.2d at 732). A claim for gross negligence "must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.*

Further, "a claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments." *Hixson v. Hutcheson*, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018); *see Coppage v. Mann*, 906 F. Supp. 1025, 1049 (E.D. Va. 1995). "The key difference is that in a gross negligence case, the plaintiff does not have to establish that the defendant subjectively

19

knew of a substantial risk." *Boley*, 2022 WL 905219, at *10. Instead, the plaintiff must show that the defendant *should have known* the substantial risk existed. *Coppage*, 906 F. Supp. at 1049 ("Unlike deliberate indifference, gross negligence does not require a juror to find that [the defendant] subjectively knew of a substantial risk; it is enough that [the defendant] should have been aware of that risk.").

The Court finds that Plaintiff has failed to state a claim for gross negligence against Dr. Patel. As stated, a claim for gross negligence "must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Fijalkowski*, 801 F. App'x at 914; *Elliott*, 791 S.E.2d at 732. Here, the facts alleged show that Dr. Patel exercised some degree of care during her only interaction with Duynes when she examined his results on January 28, 2019.

As discussed above, that day, Dr. Patel reviewed Duynes' laboratory tests and alerted Duynes of the abnormal results, which she relayed to his chronic care provider. While Plaintiff avers that Dr. Patel "failed to examine, treat, or provide the decedent with any diagnostic testing. Dr. Patel further failed to order that decedent be transported to an appropriate outside medical facility with staff equipped to treat the decedent" (2d Am. Compl. ¶ 32), these allegations contradict Dr. Patel's notes documenting the examination, which Plaintiff attached to her Amended Complaint. (2d Am. Compl. Ex. B at 9, 15.) The notes clearly establish that Dr. Patel reviewed the diagnostic and laboratory test results, notified Duynes of their abnormality, and made his chronic care provider aware of the results so that they could be discussed in his next appointment, which occurred on February 12, 2019. (2d Am. Compl. Ex. B. at 9, 15.)

Although Dr. Patel did not conduct *additional* diagnostic testing on Duynes, her review of the lab results and note that the decedent needed to be examined during his next chronic care visit does not evince a "heedless and palpable violation of legal duty respecting the rights of

20

others which amounts to the absence of slight diligence, or the want of even scant care." *Volpe v. City of Lexington*, 708 S.E.2d 824, 828 (Va. 2011) (quoting *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 800-01 (Va. 1996)). Rather, Dr. Patel's treatment shows "some degree of care," sufficient to thwart Plaintiff's claim of gross negligence. As such, the Court will grant Dr. Patel's Motion to Dismiss as to the gross negligence claim against her.

### C.   Punitive Damages

Finally, Dr. Patel moves to dismiss Plaintiff's claim for punitive damages, disputing the sufficiency of the allegations to support such an award. As to Plaintiff's deliberate indifference claims, punitive damages "are available in § 1983 actions for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Further, "[t]he callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim." *Id.* (holding that "[t]here was ample, though disputed, evidence of disregard for [the inmate's] repeated complaints and obvious symptoms" such that "submission of the punitive damages issue to the jury was thus appropriate"). As discussed above, taking the allegations in the Second Amended Complaint as true and reading them in the light most favorable to Plaintiff, the Court has found that she has not adequately stated a claim for deliberate indifference as to Dr. Patel. Thus, Plaintiff has not adequately alleged Dr. Patel's callous indifference to Duynes, and has not plausibly supported a claim for punitive damages.

Similarly, with regard to Plaintiff's state law claims, Virginia's Wrongful Death Statute provides that "[p]unitive damages may be recovered for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others." Va. Code Ann. § 8.01-

52(5). The Supreme Court of Virginia has elaborated that "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct, will support an award of punitive damages." *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 640 (Va. 1992) (quoting *Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988)). The court defined willful and wanton negligence as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (citing *Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984)). "This definition nearly mirrors the subjective prong of the *Farmer* test, which requires a plaintiff provide 'proof of the official's actual subjective knowledge of both the inmate's serious medication condition and the excessive risk posed by [the official's] action or inaction.'" *Hixson*, 2018 WL 814059, at *9 (quoting *Scinto*, 841 F.3d at 226). Thus, by inadequately stating a deliberate indifference claim against Dr. Patel, Plaintiff has failed to state a claim for punitive damages under Virginia's Wrongful Death Statute.

Therefore, the Court grants Dr. Patel's motion to dismiss the punitive damages claim.

## IV.   CONCLUSION

For the reasons set forth above, the Court will GRANT Dr. Patel's Motion to Dismiss (ECF No. 112). In sum, the Court will DISMISS WITH PREJUDICE Counts VII, for gross negligence, VIII, for deliberate indifference, and XI, seeking punitive damages against Dr. Patel.

This case shall proceed on Count VI, for negligence, against Dr. Patel.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date:  September 21, 2022

23